In the Matter of the Application of the BROOKLYN, WINFIELD AND NEWTOWN RAILWAY COMPANY, Appellant, to acquire the right to use the tracks of the GRAND STREET AND NEWTOWN RAILROAD COMPANY of Brooklyn, Respondent.

Where a corporation, organized under the General Railroad Act (ch. 140, Laws of 1850), leases a portion of the route covered by its franchise to another corporation, with the right to lay tracks thereon, not for the purpose of constructing the road of the lessor, but to enable the lessee to complete its own road, the tracks, when built, not to belong to the lessor or to be operated by it, but to be constructed at the expense of and to be operated and maintained for the use of the lessee exclusively, this is not such a user by the lessor of its franchise as is contemplated by its charter; and in determining the question whether the corporate existence and powers of the lessor have ceased because of failure to begin the construction of its road and to expend thereon ten per cent of the amount of its capital within five years after filing its articles of association, as prescribed by the act of 1867 (chap. 775, Laws of 1867), the construction and expenditure by the lessee upon the portion of the route so demised cannot be taken into consideration.

Such a corporation cannot retain its corporate existence, without the expenditure so required, by granting to another company the privilege of laying tracks over such parts of its route as the other company may desire to use.

A reservation in such a lease of a right in the lessor to run cars over a portion of the tracks laid by the lessee, on payment of a sum specified for

such use, does not avail to give the lessor the benefit of the expenditures by the lessee.

As to whether such a lease is valid, *quære.*

(Argued February 24, 1880; decided June 1, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, reversing an order of Special Term which appointed commissioners to ascertain and appraise the compensation to be made by the petitioner The Brooklyn and Newtown Railway Company to the Grand Street and Newtown Railroad Company for the use of a portion of its' tracks by the petitioner for the purpose of operating its railroad thereon. (Reported below, 19 Hun, 314.)

The facts, so far as pertinent to the questions discussed, are set forth sufficiently in the opinion.

*John H. Bergen* for appellant. It was not necessary that the construction of the road should be done by the petitioner directly it could be done by its lessee. (*Fisher* v. *New York Central R. R.*, 46 N. Y. 652, 653, 654; *Lake Ont. R. R.* v. *Mason*, 21 Barb. 544; 16 N. Y. 451.) The tracks laid became part of petitioner's road, as also did those which were laid after the lease, as to which the lessors agreed that the title to the materials, etc., might remain in the lessees. (*Haven* v. *Emery*, 33 N. H. 66; *Pierce* v. *Emery*, 32 id. 484.)

*William C. De Witt* for respondent. The lease in question was *ultra vires.* (1 R. S., p. 600, § 3; 2 Banks [6th ed.], 391, 599; id. 300, 532, 533; *Black* v. *Delaware and Raritan Canal Co.*, 27 N. J. Equity, 130, 399, 400; *Susquehanna Canal Co.* v. *Bonham*, 9 Watts & S. 27; *Commonwealth* v. *Smith*, 10 Allen, 455, 456; *Arthur* v. *C. and R. Bank* [Miss. Ct. of Errors], 9 Smed. & M. 394, 431; *State* v. *Rives*, 5 Iredell, 306; *Wood* v. *Bedford R. R. Co.*, 8 Phila. 94; *Clark* v. *Omaha R. R.*, 4 Neb. 458; 2 Kent's Com. [11th ed.] 333; Laws of 1857, ch. 444; Laws of 1874, ch. 430; 2 Redfield on Railways, 514; *Troy and Rutland Railroad Co.* v. *Kerr*, 17 Barb. 581–601; Laws of 1867, ch. 254; Laws of 1869, ch.

844; 8 Phila. 94; Laws of 1851, ch. 19, § 1; Laws of 1854, ch. 282, § 18; Laws of 1872, ch. 843, § 2.) The petitioner was defunct, it not having completed its road within the time prescribed by law. (Acts of 1867 and 1874, as amended by chap. 206 of Laws of 1878, p. 264; *Peany* v. *Calais R. R. Co.* 30 Me. 498; 72 N. Y. 247–249.)

RAPALLO, J. In the cases of the Applications of the Petitioner against *the Broadway Railroad Co.* (72 N. Y. 245, and 75 id. 335), it appeared that the petitioner had failed to begin the construction of its road, and to expend thereon ten per cent on the amount of its capital stock, within· five years after filing its articles of incorporation, and it was adjudged that under the terms of the statute (Laws of 1867, ch. 775, § 1) the consequence of that default was that, at the expiration of those five years, its corporate power to exercise the right of eminent domain ceased, and any party proceeded against by it might raise that objection. The same point was adjudged in the later case of *The Brooklyn Steam Transit Co.* v. *The City of Brooklyn* (78 N. Y. 524). In the present case the petitioner claims to have shown that it was not guilty of the default which was established in the former cases, but did, within the five years, begin the construction of its road, and expend thereon the amount required by the statute.

The grounds of this claim, which were for the first time presented in the present application, are as follows :

The petition alleges that the petitioner did, within five years after its organization, commence the construction of its railroad on Metropolitan avenue, in the city of Brooklyn, from a point on said avenue near Bushwick avenue, to the city line of the city of Brooklyn, and also for some distance on said avenue in the town of Newtown, Queens county ; and also on Grand street, between First and Second streets, in the city of Brooklyn; but it does not allege that it has expended the required amount. The answer to the petition denies the allegation therein as to the commencement of the construction of the petitioner's road, and avers that the petitioner has not com-

menced the construction of its road over any portion of the route described in the petition, and that it has not expended thereon ten per cent on the amount of its capital, and sets up the former adjudications in the applications against the Broadway Railroad Company, that the corporate existence and powers of the petitioners had ceased and terminated.

A referee having been appointed to take proofs, it was shown on the part of the petitioner that its certificate of incorporation was filed in the office of the Secretary of State on the 3d of February, 1869. That on the 28th of January, 1870, it entered into an agreement with Elwell & Green as trustees for the purchasers of the Metropolitan Railroad Company, whereby it consented that such trustees might construct and lay railroad tracks through a portion of the route of the petitioners, viz.: on First street from Broadway to Grand street, upon Grand street from First street to Fifth street, upon Fifth street from Grand street to North Second street, and upon North Second street and Metropolitan avenue to Middle Village. That said trustees might use, operate and maintain said tracks for their own use. exclusively for ninety-five years, and to that extent possess the rights and franchises of the petitioner, except that the petitioner reserved the right to run its cars over part of said route, viz.: on First street from Broadway to Grand street, on Grand street from First street to Fifth street, and on Fifth street to North Second street, paying to the trustees $100 per annum for such use.

The trustees agreed forthwith to construct said tracks at their own expense by the first of October, 1870, and to organize, under the General Railroad Law, a corporation to be called The North Second Street and Middle Village Railroad Company, with a capital of $150,000, and to pay to the petitioner, for the rights and privileges granted by the agreement, $30,000 of the stock of said corporation, and the petitioner agreed to execute and deliver to said trustees, as soon as said track should be completed and ready for operation, a lease for ninety-five years *of said track so laid* with the franchise of operating a railroad thereon, reserving to the petitioner the

right to run its cars on the streets as before specified during the term of the lease.

It was further proved that on the 26th of October, 1870, the petitioner executed a lease in which it was described as party of the first part, to the North Second Street and Middle Village Railroad Company, described as. party of the second part, demising to the party of the second part for the term of ninety-five years the right to maintain and operate a railroad upon the tracks then ·laid down, or that might thereafter be laid down, by *the party of the first part*, through the streets named in the contract before mentioned, together with all the rights and franchises granted by the Legislature to the party of the first part to operate a railroad upon the streets before named, with the same reservation to the petitioner which was contained in the contract, of the right to run its cars on First, Grand and Fifth streets, on payment of $100 per annum. This lease contained a covenant that the lessee would maintain the tracks in good order during the term, and the further provision that· at the expiration of the term ·the lessee would surrender the streets named in the lease to the party of the first part, and that all tracks laid down in said streets " by the party of the second part " should belong to and be taken away by it.

The petitioner further proved that Elwell & Green, under the contract before set forth, in the year 1870, and before the execution of the lease to the Middle Village Railroad Company, built about one mile of track on Metropolitan avenue, on the line covered by the franchise of the petitioner, and extending into Queens county, and also laid down tracks on Grand street, between First and Second streets, and that, in 1870, 1871 and 1872, after the execution of the lease, the North Second Street and Middle Village Railroad Company built additional tracks on Metropolitan avenue, extending to the Lutheran cemetery, also on the line covered by the franchise of the petitioner, and by the lease before set forth.

The petitioner now contends that the construction of these tracks by Elwell & Green, and by the North Second Street and Middle Village Railroad Company, upon part of the route cov-

ered by the franchise of the petitioner, was a beginning by the petitioner of the construction of its road, and a compliance with the provisions of the statute (Laws of 1867, ch. 775, § 1), and preserved the corporate existence of the petitioner.

This point was not taken, nor were the facts upon which it is based set up by the petitioner, in any of the former litigations in which the question of its corporate existence was involved and determined. Without considering the effect of the adjudications in those cases, we have, however, carefully examined this new position upon its own merits.

The prominent and controlling feature of the arrangement of which the petitioner claims the benefit, is, that it did not have for its object the construction of the road of the petitioner, but of that of another company which desired to occupy a part of the petitioner's route. The object of obtaining the contract and lease in question appears from the evidence to have been to enable the parties interested in building the North Second Street and Middle Village road, to complete it, and to quiet disputes which had arisen in relation to the right of way on the route they designed to occupy. The tracks, when built, were not to belong to the petitioner, or to be operated by it, nor were they to be built at the expense of the petitioner, but on the contrary, they were to be built at the expense of the contracting parties, and the contract expressly provided that they might use, operate and maintain said tracks for their own use exclusively. The petitioner was to receive as a compensation for permitting them to be built, and for the surrender or transfer of part of its franchise, $30,000 of the stock of the company to be incorporated by the contracting parties. Passing the very serious question of the legality of this division of the petitioner's franchise, and of the general nature of the arrangement, it cannot be construed into such a user by the petitioner of the franchise obtained by it, as is contemplated by the statute.

If such an arrangement as this should be sustained, and held to be a compliance with the statute, companies might be formed under the General Railroad Law for the construction of roads, covering the most extensive routes, and, without spend-

ing a dollar in the construction of their roads, they might maintain their corporate existence by retailing out to other companies the privilege of laying tracks over such parts of their routes as such other companies might from time to time desire to use.

For the purpose of obviating this very serious objection, the petitioner's counsel has ingeniously referred to certain minor features of the arrangement. The contract and lease provide that the petitioner may run cars on the tracks to be laid by the contracting parties for the distance of a few blocks. But even this use is to be paid for by the petitioner to the contractors and lessees, at the rate of $100 per annum, and it appears that, as matter of fact, but a single block of the track which the petitioner was thus permitted to use has been constructed, and the expense of such construction was about $210.

More reliance seems to be placed upon the argument that in law the petitioner owns the tracks occupied by the lessee, and in support of this argument reference is made to the language of the lease, which demised to the party of the second part the tracks then laid down, or that might thereafter be laid down, by the party of the *first* part (who is the lessor) through the streets named in the contract, and confines the right of property of the lessee in the tracks, and its right to remove the same, at the end of the term, to the tracks laid down by the party of the *second* part; and in this connection reference is made to the fact, that in the contract with Elwell & Green, no right was reserved to them to remove the tracks to be laid by them. It is therefore argued that those tracks were laid down for, and belonged to, the petitioner, and that its title to them was recognized by the lessee by taking a lease thereof, and therefore the work done by Elwell & Green inures to the benefit of the petitioner.

Without considering the question whether the language of the lease was or was not the result of inadvertence, or whether the intention of the parties, as gathered from all the instruments, was that the lessee should have no property in or right to remove the tracks laid by Elwell & Green ; and assuming

the interpretation claimed by the counsel for the petitioner to be correct, it does not aid his case. It was clearly proved that all the track laid, after the execution of the lease, was laid by the lessee, and that the amount expended in construction by Elwell & Green, before the execution of the lease, did not exceed $5,200. The requirement of the statute is, not merely that the company shall, within five years from the filing of its certificate of incorporation, begin the construction of its road, but that it shall within that time expend thereon ten per cent on the amount of its capital stock. The amount of the capital stock of the petitioner was originally fixed at $150,000, and increased in 1871 or 1872 to $300,000. An expenditure of $30,000 within five years was consequently necessary to preserve its existence. The entire amount of money expended by the petitioner for all purposes, up to June 1, 1877, was shown to be $9,016.34, consisting of legal expenses, office expenses, books, printing, engineer's and land damages; these last two items amounting together to only $1,225. Giving the petitioner the benefit of the expenditures by Elwell & Green, and of all expenditures by the petitioner for all purposes, the total would amount to less than $15,000; but of that amount less than half could be regarded as expended in construction. On no hypothesis can it be contended that the amount required by the statute has been expended by the petitioner. The expenditures incurred by the lessee clearly cannot inure to the petitioner's benefit; for, beyond all question, the tracks laid by the lessee belonged to it and were for its exclusive use, and the petitioner in no manner contributed to, or was benefited by, such expenditures. It received $30,000 in stock for the lease, and had no substantial interest in the demised premises, unless it be as a stockholder of the North Second Street and Middle Village Railroad Company, and reversioner of the right of way, stripped of the superstructure.

In thus discussing the effect of the arrangement actually made, upon the questions at issue on this application, we must not be understood as intimating any opinion of its validity, but simply as holding that on no hypothesis can the facts now

shown relieve the petitioner from the effect of our former decisions.

The order should be affirmed, with costs.

All concur.

Order affirmed.