JAMES S. THOMAS, Appellant, *v.* CHARLES BARTOW AND WIFE, Respondents.

JAMES STICKNEY, Appellant, *v.* Same Respondents.

In an assignment of an executory contract for the sale of land, there is no implied covenant on the part of the assignor of title to the land in the vendor; all that can be implied is a warranty that the assignor owned the contract, and had the right to assign it, and that the signatures thereto are genuine.

Where the vendor's relation to the title is such that it is possible and feasible for him to perform the contract, and the assignee is placed in such a relation thereto that he can compel performance, the latter cannot repudiate a contract made by him in consideration of the assignment on the ground of failure of consideration.

A party coming into a court of equity, and asking relief upon the ground of mistake, must show that he has used due diligence and good faith to avoid the consequences of the mistake. He cannot obtain relief, where his delay and omission of duty have caused irreparable mischief to the other party.

(Argued September 20, 1871; decided, January term, 1872.)

APPEALS from orders of the General Term of the Supreme Court, in the seventh judicial district, reversing judgments in favor of plaintiffs entered upon reports of a referee.

The actions were brought to foreclose certain bonds and mortgages executed by defendants to Jonathan Wadhams, and by him assigned to the respective plaintiffs above named. On the 4th day of January, 1854, defendant Bartow entered into a contract with Edwin Wadhams, by which he agreed to purchase of Wadhams, and the latter agreed " to cause to be conveyed to him," several parcels of land, known as lot No.

·14, in section 10, and lots in 4, 5, 6 and 7, in section 12, all in Union, Monroe county, and containing in all some 668 acres, at forty dollars per acre. At the time of making this agreement, it was understood by the parties to it that the title to only one of these lots was in Edwin Wadhams; afterward, and on the tenth day of the same month (January, 1854), as Bartow himself testified, "in consummation" of this contract, he received from Edwin Wadhams and wife a deed for lot No. 6, and from Jonathan Wadhams a deed for lots Nos. 14 and 4, and from Charles Collins a deed for lot No. 5, and from Jonathan and Edwin Wadhams an assignment of a contract "and the lands thereby conveyed," made between them and one John McPhierson, and for lot No. 7, upon which there was unpaid to McPhierson $2,500, and one year's interest thereon, which, when paid, McPhierson was, by the contract between him and the Messrs. Wadhams, by a sufficient deed to grant and convey in fee simple to them or to such person or persons as they should appoint; and as a part of the transactions of that day, in what Bartow characterized as a consummation of the contract on his part, he paid Wadhams $7,200—assumed to pay $9,391.10, incumbrances upon the premises, including the $2,500 and one year's interest, making in all $2,675 unpaid to McPhierson on lot No. 7; and to secure the balance of the purchase prices of the whole premises, $10,147, including something over $2,500, parcel of this contract price of lot No. 7, he gave the mortgages in suit (each reciting that it was given in consideration of the purchase-money); a fourth mortgage to one Collins for $2,100, since paid; and that he, thereupon, entered into possession of the whole premises. It also appeared that all the title McPhierson had to lot No. 7 rested in a contract assigned to him by one Atchison, who had contracted with Bayard, the true owner, for the purchase of the same. McPhierson died in April, 1857, insolvent; after which, and in May of that year, Bayard conveyed lot No. 7, with the Atchison contract, to one Lathrop, who, in June of the same year (1857), commenced a suit for the foreclosure of the Atchison contract, upon which

there was unpaid and then due $2,086.44, making Atchison, the heirs and representatives of McPhierson, and the defendant Bartow, parties defendants. Bartow gave no notice to either of the Messrs. Wadhams of the pendency of the suit, and permitted a judgment of foreclosure to be taken by default, under which that lot was sold to satisfy the amount unpaid and due upon it and costs, and purchased by one Anderson. And as a defence it was, among other things, insisted that, inasmuch as the mortgages in suit were given to secure the purchase-money agreed to be paid for all of the several parcels of land embraced in the contract of January 4, 1854, including something more than $2,500, parcel of the purchase-price of lot No. 7, the title to which had failed and McPhierson had died insolvent; and that, inasmuch as the balance unpaid on said mortgages was less than the loss sustained by the failure of the title to that lot, the complaint should be dismissed with costs. The referee found, among other things, as a fact in the case, that at the time of the foreclosure of the Atchison contract there was not so much unpaid upon it as was due from Bartow upon the several mortgages given by him for the purchase-price of the whole premises. And as a conclusion of law he found that the plaintiff was entitled to judgment for the amount claimed to be due upon each mortgage, and ordered judgment of foreclosure upon each mortgage for the amount claimed to be due upon them respectively, which was entered accordingly.

*Francis Kernan* for appellant. There is no implied warranty of title in the assignment, as it is an executed, not an executory contract. (*Houghtaling* v. *Lewis,* 10 Johns., 297; *Bull* v. *Willard,* 9 Barb., 641; *Ware* v. *Westfall,* 21 id., 177; *Carr* v. *Roach,* 2 Duer, 20; 3 R. S., 5th ed., p. 29, § 160.)

*Samuel Hand* for respondent. An assignee of a mortgage takes it subject to every defence that could be made if it remained in the hands of the mortgagee. (*Bush* v. *Lathrop,*

22 N. Y., 532; *Cowdry* v. *Coit*, Com. of App., June term, 1871.) The assignment of the McPhierson contract contained an implied warranty of title. (*Purvis* v. *Rayer*, 9 Price, 488; *Sauter* v. *Drake*, 5 Barn. & Adol., 992; *Doe* v. *Stanton*, 1 Mees. & Wels., 695; Sug. on Vendors, chap. 1, § 3, art. 17; *Burwell* v. *Jackson*, 5 Seld., 535.) McPhierson's want of title was a breach of this implied covenant and a good defence. (*Talmadge* v. *Wallace*, 25 Wend., 107; *Johnson* v. *Gere*, 2 Johns. Cas., 546.) Where a party purchases and receives a quitclaim deed, supposing there is a title when in fact there is none, he can recover back or refuse to pay purchase-money on ground of mistake in fact. (*Martin* v. *McCormick*, 4 Seld., 331; *Gardner* v. *Mayor of Troy*, 26 Barb., 423; *Hitchcock* v. *Geddings*, 4 Price, 135.) The defendant had no rights and owed no duties under the Atchison contract. (*Adams* v. *Wadhams*, 40 Barb., 225.) It was optional with the defendant to pay on the McPhierson contract, or seek his remedy on Wadhams' covenant, or by defence to the bonds and mortgages. (*Winslow* v. *McCall*, 32 Barb., 241.)

Gray, C. The Supreme Court as well as the referee seem to have overlooked the fact that when, on the 4th day of March, 1854, the contract was made by which Wadhams agreed to cause the several lots embraced in it to be conveyed to Bartow, that Bartow knew that only one of the five lots was owned by Wadhams, and that the only title he had to lot No. 7 rested in a contract with McPhierson, upon which there was unpaid $2,675, which, when paid, entitled Wadhams, or such person as he might appoint, to a sufficient deed of conveyance of that lot. From the fourth to the tenth of January, some six days, the contract between Wadhams and the defendant Bartow remained executory; then, to end it, or, as the defendant states it, " in consummation " of it, he received a deed from Edwin Wadhams for one of the lots, from Collins for another, from Jonathan Wadhams for two others; and upon securing to be paid some $2,500 of the pur-

chase price of lot 7, and assuming to pay $2,675, the amount which remained unpaid upon it from the Messrs. Wadhams to McPhierson, they assigned to him McPhierson's covenant, to convey to him that lot upon being paid the balance unpaid upon it, and thus, according to his own version of the transaction, an end was put to the contract of the fourth. It is sometimes a question necessary to be referred to and passed upon by a jury or referee, whether the receipt by an obligee of the covenant of a third party to do what has been agreed to be done by the obligor is intended by the parties as a substitute for and in discharge of the covenant of the original obligor; but where it is clearly understood, as in this case, that the object of the one in assigning and of the other in receiving is to put an end to the original obligation, its effect becomes the only question for consideration. The parties having terminated the contract of the fourth of January, by the defendant's receiving, in consummation of it, a deed from each of the owners of the respective lots owned by them, which, by that contract, Wadhams was to cause to be conveyed to him, and the assignment of a covenant of a third party to convey the remaining part, must look to the substituted covenant for the redress of any grievance he has sustained by reason of the failure of the title conveyed or covenanted to be conveyed to him.

It was claimed on the argument that the assignment of the McPhierson contract, containing his covenant to give a sufficient deed, implied a warranty on the part of the assignors that McPhierson had a good title and a right to convey the land. It implied a warranty that the assignors owned the contract assigned by them, and that the signatures to the contract were genuine, but not that the land embraced in it was the property of McPhierson. The assignment " of the land thereby conveyed " was at most but a quitclaim of the title of Wadhams to the land described therein; in which, by statute, no warranty of title could be implied. (3 R. S., 5th ed., 29, 30, § 160.) It was also insisted that, irrespective of any covenant, that where a purchaser supposes he has pur-

chased a good title and pays for it, and it turns out that the grantor had no title, the purchaser may recover back the purchase-money, on the ground of a mistake of fact. This he may do if both parties are mistaken, and not otherwise. (*Martin* v. *McCormick*, 8 N. Y., 331, 335.) Unless the mistake is mutual, if there be no ingredient of fraud, the party is remitted to his covenants. (2 Kent's Com., 11th ed., 622, marg. 473.) There is neither allegation nor proof of mutual mistake, nor of any fraud on the part of the assignors of McPhierson's covenants; and hence, without considering any other question submitted on the part of the appellant, I am of opinion that the judgment of the Supreme Court should be reversed, and that entered upon the report of the referee should be affirmed.

EARL, C. On the 4th day of January, 1854, the defendant Bartow entered into contract for the purchase, from Edwin Wadhams, of lots 4, 5, 6, 7 and 14, and, upon the payment of the purchase money, Wadhams agreed to grant and convey to Bartow, a fee simple to the lots "by a good and sufficient deed of conveyance." In this executory contract there was an implied warranty on the part of Wadhams that he had good title to the lots, and Bartow could not be compelled to take a deed in performance of it which would not give him a good and perfect title. (*Burwell v. Jackson*, 9 N. Y., 535.) But this implied warranty had force and vitality only while the contract remained executory. In such a case, after the deed has been executed and delivered by the vendor in performance of the contract, the implied covenant contained in the contract is gone, and the vendee must rely upon express covenants contained in his deed. If the vendee has taken a deed without covenants, and his title proves defective, he is without remedy, unless he can make a case for relief, upon the ground of fraud, and possibly of mistake. (*Houghtailing* v. *Lewis*, 10 Johns., 297; *Bull* v. *Willard*, 9 Barb., 641; *Ware* v. *Westfall*, 21 Barb., 177.)

Here Bartow received, in performance of the contract, a

deed of lot 6, from Edwin Wadhams, of lots 4 and 14 from
Jonathan Wadhams, and of lot 5 from John H. Collins; and
he received from Edwin and Jonathan Wadhams the McPhier-
son contract for lot 7. The contract thus became executed.
If the deeds given contained no express covenants, and there
proved to be a defect in the title to any of the lots conveyed
to him by deed, he was entirely without remedy. What
different position does he hold as to lot 7? The contract for
that lot was assigned to him by an instrument under seal, of
which the following is a copy : "For a valuable consideration
to us in hand paid by Charles Bartow, we hereby sell, assign,
transfer and set over the within contract and the lands thereby
conveyed to the said Charles Bartow, his heirs and assigns."
If Bartow has any implied covenant upon which he can rely,
it must be in this assignment. This was not an executory
contract to sell the McPhierson contract. If it had been,
it may well be, in the light of the authorities, that a
covenant would be implied, not only that they held
the contract and had the right to sell it, but that
McPhierson had a good title to the land which by his con-
tract he had agreed to convey. This was an executed sale
and transfer of the contract and of the assignor's interest in
the land, and a covenant is no more to be implied than if a
quitclaim deed had been given. If we were to treat the
assignment of this contract as the sale of a chattel, and apply
to it the rules applicable to sales of personal property, the
same result would follow. In such case there would be an
implied warranty that the assignor had title to the contract
and the right to assign it; but there could be no implied
warranty that McPhierson would perform the contract on his
part. McPhierson's relation to the title was such that it was
possible and feasible for him to perform the contract, and
Bartow, by the assignment to him, was placed in such rela-
tion to the title that he could have compelled performance.
Hence, this was not a case where the assignor had nothing to
assign and the assignee got nothing by the assignment.

The defendants cannot, therefore, rest their defence upon

any covenant; and we will look further to see if there is any other ground to rest it upon. It cannot rest upon the ground of a total failure of consideration, because it must be conceded that Bartow got by the assignment possession of the lot and a valuable interest therein, which, as we have above intimated, could have ripened into a perfect title. It cannot rest upon the ground of mistake, even if the answer, proof and findings were otherwise adequate to such a defence, because it was in such case the duty of Bartow, as soon as he discovered the mistake, to offer to rescind, or at least to notify Wadhams of it. He was informed of the alleged mistake at least as soon as the foreclosure suit was commenced against him and others by Lathrop. And yet he took no measures in that suit, as he might have done, to secure his title, as there was more due from him to McPhierson which he had assumed to pay than there was due to Lathrop; and he gave no notice to his assignors that they might protect his title. He waited until the entire interest under the McPhierson contract had been wiped out, and then for the first time made his claim on the ground of the alleged mistake. He was too dilatory, and his claim came too late. In ordinary cases of tort and breach of contract, it is a fair and just rule which requires the injured party to use ordinary diligence to make his damages as small as he can, and confines his recovery to so much damages only as he could not by good faith and ordinary diligence have averted. Much more where a party comes into equity seeking relief on the ground of mistake should he show that he has used due diligence and good faith to avert the consequences of the mistake; and it would be a poor administration of equity that would give him relief after, by his delay and omission of duty, he had caused irreparable mischief to the other party.

I am, therefore, upon the whole case, in favor of reversing the order of the General Term, and affirming the judgment entered upon the report of the referee, with costs.

All concur, except HUNT, C., not sitting.

Order reversed.