SAMUEL W. SPRAGUE, Respondent, *v.* ELIZABETH F. GRIFFIN, Individually and as Executrix, etc., of GEORGE GRIFFIN, Deceased, Appellant.

*Land sold for a gross sum — where the number of acres is less than supposed the vendee cannot recover a proportionate part of the purchase price — laches in suing therefor.*

Although the purchaser of a farm consisting of partly wild and partly cultivated lands, having a dwelling house and farm buildings thereon, conveyed to him by deed, which states that the farm contains 326 acres, more or less, and that the grantor intends to, and does, convey "all of the land and parcels lying together and owned and occupied as a farm" by her husband at the time of his decease, subsequently ascertains that the farm contains only 298 acres, he is not entitled to recover from the grantor the value of the missing acres at a price per acre proportioned to the original consideration for the whole, when it appears that the sale was made, not by the acreage, but for a gross sum, and that the grantee did not suppose, at the time of the sale, that he purchased the acres in question, as they were comprised in a piece of land which was sepa-

rated from the rest of the farm by a ditch and a hedge; certainly not where the grantee has waited nine years, after discovering the deficiency, before commencing an action to recover damages therefor, during which time the grantor, as executrix of her husband's estate, has distributed the proceeds of the sale to the persons entitled thereto, and her agent, who negotiated the sale, has died.

APPEAL by the defendant, Elizabeth F. Griffin, individually and as executrix, etc., of George Griffin, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Greene on the 5th day of October, 1896, upon the decision of the court rendered after ·a trial at the Greene County Trial Term before the court without a jury.

In January, 1881, one George Griffin died, leaving a last will and testament, with a codicil thereto, in and by which the defendant and appellant, Elizabeth F. Griffin, was designated as the executrix thereof, and was empowered by his will to sell his farm, either in parcels or together.

At the time of his death he was the owner and was in occupation of a farm which he and his wife had occupied together since their marriage in the year 1851.

Sometime in the year 1881 the defendant, as executrix, caused an advertisement to be inserted in the newspapers, wherein she offered said farm for sale, and wherein it is stated of the farm that, "It contains about one hundred acres of woodlawn, and about two hundred acres cultivated."

By means of these advertisements, or otherwise, the fact that this farm was for sale was called to the attention of the plaintiff, and in November, 1881, he, in company with a man named Jones, called upon the defendant in reference to it. At that time he says· he understood, in a general way, that the price asked for the farm was $25,000. He asked the defendant how many acres of land the farm contained. She said she did not know the exact number of acres; that she had always understood that there were over 300; how much over 300 she did not know, but the five deeds in the possession of Mr. King covered all the land, and whatever those deeds called for was there then, because Mr. Griffin had never sold any land. She informed them that Mr. King had the deeds, and if they wanted to know anything about the place they could consult him; that he would show them the deeds and papers, and if they wished to carry

on anything further, to see Mr. King, as the matter of the sale of the place was all in his hands.

The plaintiff employed a gentleman by the name of Kerr to conduct the negotiations for him. Upon an examination of the deeds referred to it was found that they conveyed to Mr. Griffin 326 acres of land; and, in consequence of a statement made by Mr. King that Mr. Griffin had not conveyed any land in his lifetime, no search was made. After some negotiations an agreement was entered into by which the plaintiff was to pay $21,000 for the farm, including some personal property of the value of about $350. The deed therefor was executed by the defendant to the plaintiff in December, 1881. The defendant desired the entire purchase price to be paid in cash, but an arrangement was made whereby the plaintiff paid $6,000 in cash and gave a mortgage back for $15,000, which mortgage was subsequently assigned to Mr. King, who paid the defendant the cash therefor.

The deed bounds and describes the land as follows: "On the north by lands of Woodbridge King, lands of Daniel Haviland and lands of John Clow; on the west by the lands of said John Clow, lands of Laban C. Rushmore, lands of James Goetschius and lands of Waltz; on the south by lands of said Goetschius and lands of said Waltz, and by the turnpike leading from Catskill to Athens; on the east by the said turnpike and lands of Peter G. Brandow and lands of said Daniel Haviland, containing three hundred and twenty-six acres of land, be the same more or less, and which lands and premises are particularly bounded and described in the following five deeds:"

Then follows a description of the deeds by the names of the grantors and grantees, and the dates and places and books where the same were recorded, and also an exception from the lands of about one-eighth of an acre, and also of about one and one-sixth of an acre, and also a provision making the conveyance subject to all roads and highways and rights of way legally existing over any part of said lands and premises. Then comes the following clause: "The party of the first part intends to and does convey by this deed all the lands and premises lying together and owned and occupied as a farm by the said George Griffin at the time of his decease."

The defendant, as executrix, distributed the proceeds of the sale of the farm, together with the other property of the testator, among the legatees of said testator, in the year 1882.

After the sale of the farm the defendant removed to the State of New Jersey, where she has since resided, but every summer, except one, she has spent several weeks in Catskill in this State, a few miles from the farm in question.

The plaintiff entered into possession of the farm in the spring of 1882. In the autumn of 1885 he ascertained that, prior to his marriage to the defendant, the said George Griffin had conveyed away thirty-three acres of the land conveyed to him by two of the deeds described, and it appears upon a survey that the number of acres embraced within the boundaries given in the deed by the defendant to the plaintiff was 298 acres.

In February, 1886, the plaintiff made a written claim against the defendant as executrix, for the payment to him of the alleged value of such thirty-three acres, as follows: Thirty-three acres of land at $150 per acre, $4,950, with interest to date, $1,205.32; total, $6,155.32.

This claim was rejected, and, on the 21st day of September, 1894, the plaintiff commenced this action against the defendant, asking judgment that there should be allowed to him upon the purchase price of said farm the sum of $4,950, on account of the deficiency and mutual mistake in regard to the quantity of land; and that that sum be adjudged to be allowed and indorsed upon the bond as a payment thereon, as of the date of said bond, and that, in default thereof, the defendant pay said sum, together with interest thereon from the 24th day of December, 1881.

Upon the trial the court adjudged the deficiency of land to be thirty acres, two roods and thirty-five perches, and allowed a recovery therefor at the rate of about $65 per acre, amounting to $2,177, with interest thereon from the 27th day of December, 1881, amounting in all to the sum of $4,126, principal and interest, together with the costs of the action. The court refused to admit proof of the value of the buildings and improvements upon the farm, and seems to have arrived at the value of the missing acres upon the assumption that the plaintiff supposed he was purchasing the farm at about the average of $65 per acre.

Prior to the commencement of this action the plaintiff had paid and extinguished the mortgage given for a part of the purchase price, and given a new mortgage for apparently a much smaller amount to Mr. King, who had died before the commencement of this action, and judgment for the aforesaid sum of $4,126, with costs, was decreed against the defendant individually and as executrix of the estate of George Griffin. Further facts will appear in the opinion.

*S. B. Brownell,* for the appellant.

*F. N. Gilbert,* for the respondent.

HERRICK, J.:

Where a contract has been entered into between parties under a mutual mistake as to an essential fact, the court has power to grant such relief as the circumstances require. And cases have been frequent in which, where the vendee in a contract for the sale of land has received, either through fraud or the innocent mistake of the grantor, a less amount of land than the contract called for, the courts have granted relief by deducting from the purchase price such an amount as would afford the party wronged redress, instead of vacating the entire contract; but those cases, as a rule, have been cases where the sale has been by the acre.

The cases of *Gallup* v. *Bernd* (132 N. Y. 370); *Paine* v. *Upton* (87 id. 327); *Wilson* v. *Randall* (67 id. 338); *Ely* v. *Padden* (13 N. Y. St. Repr. 53) were all cases where the sale had been by the acreage at a stipulated price per acre; and where, the number of acres falling short of that intended to be purchased and sold, a deduction from the purchase price corresponding with the number of acres the amount of land actually conveyed was deficient in, was an adequate and appropriate remedy.

But the rule is different where the sale is in gross; and representations by the vendor of a tract of land in regard to the quantity, where the sale is for a gross sum, do not, in the absence of fraud, bind the vendor to make compensation for any deficiency in the quantity. (*Johnson* v. *Taber,* 10 N. Y. 319.) And the reason seems to me to be that there is no mistake as to the essential facts, the price not being measured by the acreage.

This leads us to an examination of the facts in this case. The

THIRD DEPARTMENT, NOVEMBER TERM, 1897.            [Vol. 22.

defendant, with her husband, had occupied the farm in question from 1851 as a homestead; it had known, visible boundaries; there was a stone dwelling house and outbuildings upon it, together with a farm house and its outbuildings and farm structures. It was advertised for sale, and announced to contain about 300 acres. The plaintiff said that he understood that she wanted $25,000 for it. Upon calling upon her he was informed by her that she did not know the number of acres; she thought there were about 300, and referred him to her lawyer for future negotiations. That lawyer, Mr. King, died before the commencement of the action, so that we are dependent upon the plaintiff and his agent as to what took place between them.

The plaintiff looked over the farm and told his agent that if, after examining the deeds, the amount of land was over 300 acres, and the title and everything was all straight, he might, if he thought best, submit an offer of $20,000. Subsequently, the plaintiff met Mr. King, and the plaintiff says, at that time I had a talk with Mr. King as to the price per acre and the quantity of land; "we talked in a general way, we figured the land; the price he wanted then came to a little over $65 an acre. Then he had offered the farm for $21,000." In connection with that he spoke of the price being about $65 per acre. Again, he says that " We had submitted an offer of $20,000 to Mr. King. Mr. King sent word that he wanted to see me; I could not leave, and got Mr. Kerr to come out; he told Mr. Kerr she wouldn't take $20,000 for the farm, but she would take $21,000; * * * I told Mr. King 'if she would put in a thousand dollars' worth of personal property I would take the farm.' * * *

"Mr. King, Mr. Kerr and myself went back to Catskill; we talked the matter over that night, and the next morning I went down and saw Mr. King and told him we had decided to take the place at $21,000, including personal property, which I think Mrs. Griffin inventoried at $350, making the price of the land $20,650.".

Mr. Kerr, the plaintiff's agent, says that when he looked over the deeds by which Mr. Griffin had received title to the farm in question, he figured up the amount of land and Mr. King said: " 'Well, this has come out better than I had an idea. I always supposed there was a little over three hundred acres, but I didn't know there was

as much land as this; they ought to get more money for the place.' And then I think he took his pencil and figured a little on a slip of paper and said, ' This is only a little over $75 an acre.' They were asking $25,000 for the farm. I said to him soon after, ' Mr. King, if you were asking only $65 an acre instead of $75, I think perhaps Sprague would buy it.' "

Subsequently, he says King said to him : " ' Laying as it does along the river here, with the location that it has got, the place to live and the value as a farm, that ought to bring $30,000; it ought not to be sold less than that.' I told him Sprague couldn't and wouldn't give any such price as that for it in any event. He said we weren't talking money enough; he didn't think Mrs. Griffin and the heirs would consent to sell at any such figure as I was talking about. The only figures I had said was if he would say $65 an acre, I thought perhaps Sprague would buy."

Subsequently, he says : " I said to him, ' Mr. King, I have made up my mind to submit an offer of $20,000 in behalf of Mr. Sprague for that property.' He thought a minute and said, ' Might better have taken you up at $65 an acre.' I said I didn't understand I had offered $65 an acre, but I did say, ' If you were talking $65 an acre — if you were talking only that — I would think we might get to a bargain.' He said, ' You hadn't ought to think of offering less than $65 an acre.' Sixty-five dollars an acre came to more than $20,000, and I answered him in this way : ' Now I considered $65 an acre in making the proposition, but the way I got at it is this ; there is enough waste — poor and waste land in the farm which has no value — which, if stricken out, would bring the price down to at least $20,000,' and he replied that was a queer way to figure, and he said there were so many other acres that were worth a good many more than that, he didn't think I ought to figure in that way ; then I said to him it didn't make any difference anyway, because I was satisfied that Sprague wouldn't undertake to pay over $20,000 in any event."

It seems to me very apparent from this that they were considering the farm as a whole, and not negotiating at a fixed price per acre.

Subsequently, the same witness says that, upon again seeing Mr. King, Mr. King said, " That Mrs. Griffin and the heirs had considered the matter and they had made up their minds that they

would sell the place for $21,000, but they wouldn't sell it for $20,000."

Afterwards the witness Kerr saw the defendant at Mr. King's house and he said : " We chatted a few moments and she expressed herself, I can't quite give the words, but as being pleased to think that we had found 326 acres of land, and she said there that she had never known much about the amount of land in the farm, but was glad there was that much, and was pleased to think we had found it, and thought we would be pleased with the place, and so on."

I have gone somewhat at length into this testimony and have set forth everything in the evidence that seems to me to relate to the question as to whether this farm was purchased by the acreage, or whether it was sold as a whole, irrespective of the exact number of acres.   There are some repetitions of the same evidence by the same witnesses, but nothing I think in addition bearing upon that question, and it seems to me apparent that the purchase price was not determined by the number of acres.   When the plaintiff and his agent discovered, as they thought, that there were thirty-three acres more than the defendant supposed there was, it did not lead them to increase their offer; when that fact was communicated to the defendant it did not induce her to increase her price.   It did not indicate to her that there was any more land in the homestead than she had supposed, but only that the farm amounted to more acres in number than she had thought, and, therefore, it did not cause her to ask any more for it.

And it appears further that the plaintiff never supposed he had purchased this particular piece of land which Mr. Griffin had conveyed away before his marriage to the defendant; it seems to have been separated from the rest of the farm by a ditch and a hedge, and the plaintiff, in his testimony, states that : " Prior to the fall of 1885 I did not have an idea that I purchased or negotiated for this piece of land west of the ditch — not of that particular piece of land.   I supposed I had 326 acres inside of these lines."

Assuming then that there was a mutual mistake as to the quantity of land bought and sold, that mistake was not the essential fact upon which the contract turned.

The defendant was selling for a gross sum the homestead, irrespective of the number of acres it contained.

This presents an entirely different case from those I have referred to, where the land was sold by the acre, and where the real agreement was to sell land at a given price per acre, the price per acre being the point where the minds of the parties met, the number of acres simply measuring the total amount of the payment; and where the court, by deducting from the total purchase price the number of acres by which the tract conveyed fell short, multiplied by the purchase price per acre, has simply enforced the essential features of the contract between the parties and permitted the recovery of an overpayment.

When land is sold by the acre, or where it is wild, uncultivated land, all of the same average value, such a remedy affords substantial justice; but it seems evident that it ought not to be applied in a case like this, where the land is partly cultivated and partly uncultivated, some poor and waste land, some well-wooded and good, with a number of buildings upon it, apparently in good condition; in such a case, simply dividing the purchase price by the total number of acres each party supposed the farm to contain, without taking into consideration the value of the buildings and improvements, and multiplying the result by the number of acres the farm fell short of what it was supposed to contain, seems very clear to me as not the proper way of either determining the value per acre of the land in question, and thus the amount of the overpayment, or of fixing the amount of damages suffered by the plaintiff, if we treat it as an action for the recovery of damages.

But there is another aspect of the case that should be considered. When there has been an innocent mutual mistake of an essential fact, whereby the minds of the parties have never met, then if the contract is as yet executory it need not be carried out; if executed it may be rescinded, but it cannot be partly rescinded and partly enforced at the option of one party; that is to make a new contract, to which both parties must assent. The party claiming to be aggrieved cannot cling to what is beneficial and repudiate what is detrimental to him in the contract. Bear in mind that I am speaking of a mutual innocent mistake as to an essential fact, not of a fraud or of a plain breach of contract where one may hold to the contract and sue for damages for the fraud or breach.

The cases where a deduction has been made from the purchase

price, or a judgment given for the price of the number of acres the land fell short, were, as I stated before, cases where the essential features of the contract were really enforced. That is to say, the essence of the contracts was to convey land at an agreed price per acre, the number of acres simply measuring the total price to be paid; and there were mutual mistakes as to the number of acres contained in the tracts conveyed or agreed to be conveyed, and the vendees accepted such number as the vendors could convey, with an abatement of the purchase price as measured by the number of acres the tracts or farms fell short of that agreed to be conveyed, or they kept the land actually conveyed to them, and recovered back overpayment made by them; there the vendors were held to their contracts to sell land at a given price per acre, no matter how many acres the tracts or farms contained.

In this case, as before stated by me, the sale was not by acreage, but in gross. After reading the testimony, I hardly think any one would say that, if it had turned out that there were 350 acres within the boundaries described in the deed, the defendant could have compelled the plaintiff to pay for the additional number of acres. The sale being in gross, the plaintiff has mistaken his remedy if he has any. He cannot partly enforce and partly repudiate his contract. He cannot keep the farm and yet repudiate the amount of the purchase price for the reason that the number of acres in it was not an essential feature of the contract; the defendant did not agree to sell it to him upon any such basis.

She thought she had about 300 acres in the farm; it turns out she had 298. When informed that there were 326, she asked no more for it.

If she had been informed that her husband, before her marriage to him, had owned and conveyed away the 33 acres west of the hedge and ditch, land that she had never supposed he owned, and which the plaintiff did not suppose he was buying, can any one for a moment believe she would have asked the plaintiff any less for the farm because of that discovery?

Originally she asked $25,000 for the farm; the plaintiff offered her $20,000; she finally agrees to take $21,000; the defendant agrees to give it provided she includes certain personal property valued at $350; she consents.

It was not a sale at $65 or $63.37½ per acre or of 326 acres at $65, or any other sum per acre. But it was a sale of the farm as such for the sum of $20,650; that was her final price. The essence and substance of the contract was to sell the farm for $20,650. She agreed to sell for that, the plaintiff to pay that for it. No such contract is enforced or attempted to be enforced here. The plaintiff keeps the farm, but wants to be relieved from paying the purchase price agreed upon.

The deduction of $2,177, as provided for in this judgment against her, reduces the purchase price of the farm to $18,473; in other words, the relief granted to the plaintiff by the judgment herein imposes a new contract upon the defendant; that is, to sell the farm for $18,473, instead of $20,650; that is a contract she never made, and by which she is not bound. (*Crowe* v. *Lewin*, 95 N. Y. 423, 427.)

It seems to me, therefore, that the judgment in this case is one to which the plaintiff is not entitled; it is not the enforcement of any contract entered into between the parties, but, in substance, is the making and enforcement of a new contract to which the defendant has never consented.

There are a number of other questions in the case that I have not thought necessary to consider; among others, whether a judgment against the defendant individually is proper; whether, by the terms of the description in the deed, the plaintiff is entitled to any more land than is contained within the boundaries as defined by the lands of other persons named therein; whether the plaintiff is not concluded by the payment of the purchase-money mortgage; and also whether a party desiring to correct or be relieved from a contract entered into under a mutual mistake of facts, should move promptly upon discovering the mistake. (*Thomas* v. *Bartow*, 48 N. Y. 195.)

That the plaintiff did not do. The importance of prompt action is illustrated in this case by the fact that the defendant has long since distributed the proceeds of the sale of the farm, and that her agent who conducted the negotiations on her behalf, and who would have been an important witness, died before the commencement of the action. Nine years elapsed between the discovery of the mistake and the commencement of the action, and the facts

had become dimmed and the case cold and stale. It is true that the defendant became a resident of another State the year after the sale, but, with the exception of one year, she had been a yearly visitor to this State, spending several weeks each year within a few miles of the farm in question. She was at no time beyond the reach of the law in some forum, and each year was for weeks within reach of the process of this court.

I think, therefore, that the judgment should be reversed, and a new trial granted, with costs to abide the event.

All concurred.

Judgment reversed, and a new trial granted, costs to abide the event.