(48 Misc. Rep. 134)

LIGHTON et al. v. CITY OF SYRACUSE.

(Supreme Court, Special Term, Onondaga County. August, 1905.)

1. JUDGMENTS—MERGER AND BAR OF DEFENSES.
   Where mandamus was brought to compel the mayor of a city to execute a contract for the purchase of land pursuant to a resolution of the common council, and the proceeding was defended by the corporation counsel acting in behalf of the city, a judgment awarding the writ was res judicata as to the legality of the contract and its sufficiency in form, as against the city, in a subsequent action by the owners of the land to specifically enforce the contract entered into as the result of the mandamus proceeding.

2. VENDOR AND PURCHASER—TITLE OF VENDOR—APPROVAL BY COUNSEL.
   Where a city council directed the execution by the mayor and clerk of a contract for the purchase of land, pursuant to which a contract was executed, requiring the approval of the title by the corporation counsel, the refusal of that officer to approve a marketable title did not prevent the vendors from enforcing specific performance.
   [Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and Purchaser, § 260.]

3. SPECIFIC PERFORMANCE—CONTRACT OF CITY.
   Where a city council passed a resolution directing the purchase of land from certain persons and the contract for the purchase of the land was properly executed, it was specifically enforceable against the city by a vendee of the land.
   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, § 107.]

**4. SAME—ATTEMPTED RECISSION.**

Where a city council passed a resolution authorizing the purchase of certain land, and a contract was executed pursuant to the resolution, the subsequent rescission of the resolution was no defense to an action to specifically enforce the contract.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, § 107.]

**5. SAME—POWER OF COURT.**

A court of equity has jurisdiction to compel the specific performance of an executory contract for the conveyance of lands.

[Ed. Note—For cases in point, see vol. 44, Cent. Dig. Specific Performance, §§ 56–58.]

**6. SAME—DEFICIENCY IN LAND.**

Where a contract provides for the sale of land in gross, an immaterial difference between the quantity of land mentioned in the contract and that actually contained in the tract will not defeat an action for specific performance.

[Ed. Note—For cases in point, see vol. 44, Cent. Dig. Specific Performance, §§ 23, 61–64.]

**7. MUNICIPAL CORPORATIONS—STREETS—EXTENT—PRESCRIPTION.**

Where a building had stood for over 50 years upon a portion of a street, the public rights in which had arisen by prescription, the building was to be regarded as a monument establishing the street line, in the absence of any evidence that the land covered by the building had ever been used by the public.

Action by Mary Lighton and another against the city of Syracuse. Judgment for plaintiffs.

Walter Welch (James E. Newell, of counsel), for plaintiffs.

Walter Magee, Corp. Counsel, and Benjamin Shone, Asst. Corp. Counsel, for defendant.

ROGERS, J.  On the 27th of November, 1899, the common council of the city of Syracuse adopted a resolution:

"That the mayor and the clerk be and they hereby are authorized and directed to enter into a contract with Mary Lighton and Martha T. Lighton, for the purchase of the real estate, situated at the southwest corner of East Water street and Montgomery street, the same being twenty-five feet front on East Water street, the same in rear, and seventy-five feet on Montgomery street, at the sum of $21,000, free and clear of all incumbrances; $5,000 to be paid over before January 12, 1900, the title to which to be approved by the corporation counsel, and the same to be paid for in such manner as the city is authorized by an act of the Legislature to be passed at the legislative session, commencing January 1, 1900; and for that purpose the senator and members of assembly of Onondaga county are requested to procure the passage of such an act."

At a meeting of said common council held on the 26th day of December following James K. McGuire, the then mayor, in a communication, dated December 19th, returned said resolution without his approval, stating, among other things, that he favored renting the property and eventually buying it, but that the same should be done differently and in a manner more to the advantage of the city than as proposed by said resolution. On the 26th day of December, 1899, said resolution was carried over the mayor's veto, 15 aldermen voting for the resolution and 3 against. One alderman was absent. On the 9th day of February, 1900, the mayor persisting in his refusal

to acquiesce in the action of the common council, said plaintiffs procured from Mr. Justice Scripture an order requiring said mayor, the city clerk, and corporation counsel to show cause at a special term of this court, appointed to be held at the courthouse in the city of Syracuse, on the 10th day of February following, why a peremptory writ of mandamus should not issue, directing the said corporation counsel to certify and the mayor and clerk to sign the contract presented to them for their signatures. On the 17th day of February, the court, Mr. Justice Andrews presiding, dismissed the proceeding as against the corporation counsel, and also directed that the application for a peremptory writ of mandamus against the mayor and city clerk be denied; but that an alternative writ issue commanding them and each of them to sign and execute the contract contained in said moving papers for the purchase of the real estate situated on the southwest corner of East Water street and Montgomery street, in said city, the same being 25 feet front on East Water street, the same in rear, and 75 feet front on Montgomery street, for the sum of $21,000, in accordance with the provisions of said resolution of the common council, which contract was dated February 6, 1900, or show cause why the command of said writ should not be obeyed, and that they make return to said writ within 20 days after service thereof on them. The mayor and city clerk made a return to said alternative writ, and, among other things, alleged that said real estate was worth, at the time of the passage of said resolution, the sum of $12,000 only; that the common council, by said resolution, undertook to bind the city of Syracuse to pay a price therefor grossly exorbitant, the payment of which would work a waste of its funds and property; that said resolution was both a legal and an actual fraud upon said city, and was adopted in bad faith, amounting to legal fraud.

The issues thus formed were sent to a referee "to hear, try, and determine," who made his report to the court, finding, among other things, that said premises were fairly and reasonably worth the sum of $21,000; that in the passage and adoption of said resolution the relators, the common council, and all other persons connected with the transaction acted in good faith, and were free from fraud and collusion; that said contract was in proper form, had been duly executed by the relators, who had done and performed each and every act and thing on their part, and each of their parts to be performed and done, to entitle them to have said contract signed and executed by Jay B. Kline, as mayor, and George J. Metz, as city clerk of said city, and who were duly authorized by resolution of the common council of said city so to do, said Kline and said Metz being the successors in office, respectively, of said McGuire and Saunders; and that the mayor and city clerk should sign, execute, and acknowledge the same for the purchase of said premises. Thereafter said report was considered by the court and the findings of fact and conclusions of law of the referee in all things confirmed, except in so far as the referee found direct damages to the relators against the then mayor and clerk of the city of Syracuse, they being successors of the mayor and clerk in office at the time of the making of said application for a writ of mandamus; and the court thereupon adjudged that a peremp-

tory writ of mandamus issue. The judgment roll in said proceeding was filed and judgment was entered in the clerk's office of Onondaga county July 6, 1903, directing the then mayor and the then city clerk, as such, forthwith and immediately upon receipt by them of said peremptory writ of mandamus, to properly sign, seal, execute, and acknowledge the said contract for the purchase price of said premises. Said judgment has not been appealed from, vacated, nor set aside, but remains in full force and virtue.

November 7, 1903, pursuant to and in accordance with said judgment, a peremptory writ of mandamus was issued to the said Kline and Metz, the then, respectively, mayor and clerk of said city of Syracuse, commanding them to execute said contract, and who, on the 10th day of said November, respectively, did duly sign and acknowledge said contract, substantially in accord with said resolution, except that it was also therein mutually agreed that before said purchase price of $21,000, or any part thereof, should be paid by the defendant, the parties of the first part (the plaintiffs) should furnish and deliver to the defendant a search of said premises, duly certified by the clerk of Onondaga county, showing them to be free and clear of all liens and incumbrances, and also showing in the plaintiffs a marketable title, which title should be approved by the corporation counsel. About December 12, 1903, a deed of said premises, with an abstract showing, so far as I can discover, a good title and a provisional arrangement for the discharge of all liens, was tendered by the plaintiffs to the defendant, and the abstract of title was presented to the said corporation counsel for his approval, together with a demand that the defendant perform. The city declined to accept said deed, and the approval of the corporation counsel was withheld. These offers and demands, with satisfaction of the liens, were thereafter repeated and acceptance refused; one tender in particular having been made February 24, 1904. Notwithstanding the execution of said contract and said tender of a deed, with satisfaction of liens, the defendant declined to perform; and on the 20th day of June, 1904, said common council adopted a further resolution which, in terms, rescinded said resolution of November 27, 1899. Of the liens on said premises one was a mortgage to the Cortland Savings Bank, dated July 2, 1900, to secure the sum of $12,000 and interest. The plaintiffs, doubtless because of the embarrassment occasioned by the defendant's refusal to perform said contract, made default in the payment of said mortgage. It was foreclosed and the property was bid in by the mortgagee, which took a deed bearing date April 20, 1904. Title to the premises then became vested in the bank, but it now offers to convey to the defendant, so that in connection with the deed tendered by plaintiffs, the same title can now be passed to the city as would have been given if the mortgage had not been foreclosed.

The corporation counsel in his argument urges that the action cannot be maintained because (1) the action of the common council, in the adoption of the resolution to purchase, was fraudulent; (2) that authority to contract terminated with the adjournment of the legislative session beginning January 1, 1900; (3) that by section 229 of revised charter the common council is without power to raise the

amount necessary to pay the purchase price; (4) that the contract being for the payment of "$250, or more," ought not to have been "entered into" without first having indorsed thereon the certificate of the corporation counsel that such contract is in proper form and duly authorized, as provided in section 61 of the revised charter, also, as being within a similar prohibition contained in section 417 of charters for cities of the second class; (5) that the abstract of title has not been approved by the corporation counsel, as required by the contract itself; (6) that the defendant is not required to accept title from a party other than the plaintiffs; (7) that the defendant, June 20, 1904, by its common council, adopted a resolution rescinding the resolution to purchase, passed over Mayor McGuire's veto December 26, 1899; (8) that plaintiffs have an adequate remedy at law; (9) that plaintiffs' title never covered all the land mentioned in the contract; and, finally (10) that the plaintiff's building on said lot encroaches upon the street, thereby making the amount owned much less than contracted to be sold.

It seems to me that the questions raised by objections 1, 2, and 3, being as to matters existing prior to or contemporaneously with the judgment directing that a peremptory writ of mandamus issue, are not now open to debate; that it must be found the action of the common council was free from fraud, duly authorized, and not dependent for its validity upon subsequent legislative action; and that the plaintiffs had duly performed on their part. So much was involved in the mandamus proceeding and decided by Mr. Justice Andrews. It is not to be conceived that the Supreme Court would require a party to do a vain thing—to formally execute a contract which, when made, would be in contravention of law or morals, and the performance of which, when executed, could not be enforced. This action is not between the same parties in name as was the mandamus proceeding. The relators there are plaintiffs here. This defendant was not a party, but was represented there by its mayor, the clerk, and the corporation counsel; the latter particularly acting in its behalf. As I understand, the city, through the corporation counsel, assumed and conducted the defense. This, I think, made the adjudication binding upon the city, to the extent of what was there actually decided, or what, within the pleadings, might have been decided. Ashton v. City of Rochester, 133 N. Y. 187, 30 N. E. 965, 31 N. E. 334, 28 Am. St. Rep. 619. In the case cited the court (at page 192 of 133 N. Y., page 967 of 30 N. E. [28 Am. St. Rep. 619]) said:

"The record shows that upon the application of certain of the property owners on the street, other than the plaintiffs, liable to be assessed for the improvement, the Supreme Court at Special Term awarded a mandamus against the executive board, commanding it to proceed upon the resolution and to award a contract for the performance of the work. That, acting in obedience to this command, the board did award the contract in accordance with the provisions of the charter prescribing the powers and duties of the board. The decision upon the application for the mandamus was a judgment of a court of competent jurisdiction. It adjudged that the resolution of the common council was in full force, notwithstanding the motion to reconsider, and that it was the clear legal duty of the executive board to proceed and let the contract. This judgment could not thereafter be questioned collaterally by any of the parties, nor any one else who was represented in the proceeding. They

might attack it directly by appeal or motion to set aside, or for a rehearing; but, so long as it remained unreversed and not set aside, it bound every one who was a party, or represented in any subsequent collateral action or proceeding. It is quite clear that it bound the property owners who applied for the writ, the executive board, and the city. The only question is whether it bound these plaintiffs who were not parties by name. * * * When a judgment is rendered against a county, city, or town in its corporate name, or against a board or officer who represents the municipality, in the absence of fraud or collusion, it will bind the citizens and taxpayers. * * * The executive board laid the matter on the table, and, in effect, refused to act, treating the resolution as rescinded by the common council. They were brought into court and the very question involved was whether the board had authority to contract for the execution of the work, and the court held, upon full argument and against the contention of the board, that they had. The question was whether they had power under the proceedings to make a contract and incur an expense which was to be paid by the property owners, and it was adjudged that they had, and that it was their duty to do so. When the executive board was before the court on that application they represented and spoke, not only for themselves and the city, but also the property owners who were to be bound by the contract, and whose property was to be assessed for the expenditure which the work embraced in the contract involved."

Upon motion for reargument, the court, by Judge O'Brien (at page 197 of 133 N. Y., page 334 of 31 N. E. [28 Am. St. Rep. 619]), said:

"But clearly one of the issues presented by the pleadings was the power of the executive board to pass the resolution and enter into the contract. A former adjudication in which that point was determined was evidence for the defendant on that issue, and the judgment upon the application for a mandamus was such an adjudication. Culross v. Gibbons, 130 N. Y. 447, 29 N. E. 839. The common council had no power to make the contract, but the executive board had. Therefore, in entering into such contracts, the board represents the city in the same sense that the mayor and common council would represent it if the duty devolved upon them, and a judgment in an action or proceeding against the board to compel them to act with respect to the awarding of the contract, in which it is decided that the board has the power and it is their duty to proceed, estops the city."

It will be noted that neither Mayor McGuire nor Clerk Saunders had any individual interest in the mandamus proceeding. They acted as the representatives of the city. The city only was interested in the controversy, which terminated in a direction to its officers to execute the contract. Why should not their principal be bound in the same manner as though named a party to the proceeding? Castle v. Noyes, 14 N. Y. 329; National Park Bank v. Whitmore, 7 N. Y. St. Rep. 456; Matter of Brooklyn W. & N. R. Co., 19 Hun, 314, affirmed 81 N. Y. 69; Carleton v. Lombard, Ayres & Co., 149 N. Y. 137, 43 N. E. 422. But assuming the mandamus judgment is not res judicata, it is a precedent, established by a learned justice of this court, whose decision it is my duty and pleasure to respect and follow. I therefore find the same facts and conclusions of law as were found by Mr. Justice Andrews.

The fourth objection is as to the omission of the corporation counsel to indorse his approval on the contract. The statutes, on which reliance is placed, are as follows:

"No written contract, providing for the payment of $250, or more, shall be entered into by an officer or department, until there shall be indorsed thereon a certificate of the corporation counsel, to the effect that such contract is in

proper form and is duly authorized." Revised Charter of City of Syracuse, § 61.

Also:

"No written contract providing for the payment of two hundred dollars, or more, entered into by the city or any of its officers, boards or departments shall be acted under until there shall be indorsed thereon by the corporation counsel or his assistant, a certificate to the effect that the said officer, board or department which has executed the same on behalf of the city, had authority and power to make such contract, and that such certificate is in proper form and properly executed." Charter of Cities of the Second Class, § 417.

Referring again to the mandamus proceeding, it will be seen that Mr. Justice Andrews must have decided "that such contract is in proper form and is duly authorized"; and that the "board or department, which has executed the same, on behalf of the city, had authority and power to make such contract," because it is not to be conceived that he would have commanded the execution of a contract not in proper form and not duly authorized; nor where there was lacking the authority and power in the board or department to make it. Confronted with this adjudication, and appreciating, as he must have done, that the contract had its inception in a resolution of the common council—the legislative department of the city, clothed with authority and discretion as to its exercise—and was, finally, duly executed by the proper officers, I am not able to discover why the corporation counsel should have withheld his approval. He is a ministerial officer, selected by the mayor, whose "duty it is to prosecute and defend all civil actions or proceedings, by and against said city and every department thereof, and to perform such other professional services relating to the affairs of said city, as the mayor may direct." Revised Charter, § 61. He may advise, but cannot command. While his refusal to approve was no doubt well intended, I am not persuaded that he is vested with power to hold up or defeat contracts, otherwise duly executed and valid, between the municipality and the parties with whom it has occasion to deal, particularly after the court, by due and regular procedure, has indorsed its approval. It may be suggested that "statutory prescriptions, in regard to the time, form, and mode of proceeding by public functionaries are generally directory, as they are not of the essence of the thing to be done, and are given simply with a view to secure system, uniformity, and dispatch in the conduct of public business," compliance with which is not absolutely essential to the validity of a contract. 26 Am. & Eng. Encyc. of Law (2d Ed.) 689; People ex rel. J. B. Lyon Co. v. McDonough, 173 N. Y. 181, 65 N. E. 963; Matter of Petition of New York Protestant Episcopal Public School, 47 N. Y. 556; People ex rel. Lefever v. Supervisors of Ulster County, 34 N. Y. 268. On the whole, I do not think this objection tenable.

The objection that the abstract of title has not been approved by the certificate of the corporation counsel presents a question somewhat akin to that last mentioned. By reason of the defendant's persistent refusal to perform, the plaintiffs have been delayed in carrying out their contract with the city. Meanwhile the savings bank mortgage has been foreclosed and the title taken by the mortgagee. Changed conditions, however, occasioned by the defendant's opposition, ought

not to be pressed with undue zeal at this time (Merchants' Bank v. Thomson, 55 N. Y. 7, 13); nor are they, necessarily, fatal to an action for specific performance (Smyth v. Sturges, 108 N. Y. 495, 502, 18 N. E. 544). As before stated, nothing appears in the abstract and the accompanying satisfactions of the various liens, including the deed tendered by the Cortland Savings Bank, showing a defect in the plaintiffs' title. An incumbrance existing at the time of the commencement of the action will not defeat specific performance, if it be satisfied at the time of the trial. Baldwin v. Salter, 8 Paige, 473; Jenkins v. Fahey, 73 N. Y. 355; Horton v. Bauer, 129 N. Y. 148, 155, 29 N. E. 1; National Webster Bank v. Eldridge, 115 Mass. 424; Nicklas v. Keller, 9 App. Div. 216, 41 N. Y. Supp. 172. Hence no valid reason exists why the certificate of the corporation counsel should not be made.

The plaintiffs are bound to furnish a marketable title, one free from reasonable doubt at the time of the trial (Kilpatrick v. Barron, 125 N. Y. 751, 26 N. E. 925; Kahn v. Chapin, 152 N. Y. 305, 310, 46 N. E. 489; Guynet v. Mantel, 4 Duer, 86; Todd v. Union Dime Savings Institution, 128 N. Y. 636, 28 N. E. 504), and no more. A captious objection to the title tendered will not justify a refusal to perform. Hellreigel v. Manning, 97 N. Y. 58. This is an action in equity, which regards as done what ought to be done. Matter of Hatch, 155 N. Y. 406, 50 N. E. 49, 40 L. R. A. 664; Sprague v. Cochran, 144 N. Y. 104, 114, 38 N. E. 1000; Story, Eq. Juris. § 64g. The agreement in question may be likened to a building contract, requiring the architect's certificate of due performance before the contractor is entitled to be paid. The authorities are numerous that, where such contract has in fact been duly performed, the refusal of the architect to make the proper certificate does not prevent a recovery. Nolan v. Whitney, 88 N. Y. 648; Weeks v. O'Brien, 141 N. Y. 199, 36 N. E. 185; Van Keuren v. Miller, 71 Hun, 68, 24 N. Y. Supp. 580.

Here, the title being marketable, the corporation counsel ought to have so certified, but his omission will not be permitted to frustrate the purpose of the parties to the contract. Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634. No good reason is presented for refusing to accept the plaintiffs' deed, in connection with a deed from the savings bank. The latter must be quite as effective as the satisfaction of the mortgage, before foreclosure, would have been. As already seen, a satisfaction of the mortgage itself would have operated to make good title, so far as the incumbrance is concerned. Baldwin v. Salter; Jenkins v. Fahey; Horton v. Bauer; National Webster Bank v. Eldridge, supra. All that the defendant has a right to ask is the whole title unincumbered, and whether it comes from the plaintiffs alone, or the plaintiffs and others, cannot affect its quality.

If the plaintiffs were not to be grantors in the deed, a different situation might arise as to the covenants contained therein, though, apparently, not to the defendant's disadvantage. Bigler v. Morgan, 77 N. Y. 312; Macdonald v. Bach, 51 App. Div. 549, 64 N. Y. Supp. 831. The resolution of the defendant's common council, adopted

June 20, 1904, that the city would violate its own contract, cannot operate as a defense to the action. It might have the effect of excusing further tender of performance by the plaintiffs. Crary v. Smith, 2 N. Y. 65. Nor is the contention sound that a court of equity has not jurisdiction to compel the specific performance of an executory contract for the conveyance of lands. Crary v. Smith; Smyth v. Sturges, supra. Indeed, it is doubtful whether, under the circumstances of the case at bar, the plaintiffs could have had an adequate remedy at law. Kuntz v. Schnugg, 99. App. Div. 191, 90 N. Y. Supp. 933.

There now remains to be considered the description of the plaintiffs' lot. The contract is of a lot briefly described as follows:

"Being the premises and real estate, situate on the southwest corner of East Water street and Montgomery street, in said city, the same being twenty-five (25) feet front on East Water street, the same in rear, and seventy-five (75) feet front on Montgomery street."

The wall of the plaintiffs' building from the Montgomery street corner westerly, along East Water street to the center of the adjoining party wall, is 24 and $^{61}/_{100}$ feet in length, or $^{39}/_{100}$ of a foot short, as the line is in the description; but the cornice on Montgomery street side extends 16¼ inches easterly from the face of the wall, making, with that included, something over 25 feet. The east and west walls on Montgomery street are 75 feet and 2 inches in length. This building was erected more than 50 years ago, which is an important consideration. Harrison v. Platt, 35 App. Div. 533, 54 N. Y. Supp. 842. The dimensions were stated at the meeting of the common council at which the resolution to purchase was adopted to be 75 feet by 24 feet, 7 inches. The building is directly across Montgomery street and only a few feet from the City Hall, and must have been well known to the officials of the city at the time of making the contract. Though described by metes and bounds, the contract was for a "sale in gross." 7 Words & Phrases, 638. Hence the precise area in feet and inches was not of its essence. In such case, there being no fraud, the purchaser is entitled to the whole if there be a small excess over the supposed quantity, and bound to take, if less, without; on the one hand, being compelled to pay, or, on the other, being compensated for, the difference. Roat v. Puff, 3 Barb. 353; Johnson v. Taber, 10 N. Y. 319; Morris Canal Co. v. Emmett, 9 Paige, 168, 37 Am. Dec. 388; Sprague v. Griffin, 22 App. Div. 223, 47 N. Y. Supp. 857; Wilson v. Randall, 67 N. Y. 338; Moser v. Cochrane, 107 N. Y. 41, 13 N. E. 442. The test of materiality of the variance as to quantity is, had the falsity been known, would the contract have been entered into? Stokes v. Johnson, 57 N. Y. 673. Such immaterial difference will not defeat an action for specific performance. Levy v. Hill, 50 App. Div. 294, 63 N. Y. Supp. 1002; Harrison v. Platt, supra; s. c., affirmed 158 N. Y. 712, 53 N. E. 1126; Pom. Spec. Perf. § 352; Waterman, Spec. Perf. 535, pars. 535, 538, 539; Beyer v. Marks, 2 Sweeney, 715.

Finally, the defendant contends that the building on plaintiffs' lot encroaches on Montgomery street, on the East Water street corner $^{94}/_{100}$ of a foot, and on the southerly corner $^{77}/_{100}$ of a foot.

This calculation is made by measuring 66 feet from two monuments on the easterly side of Montgomery street, one said to have been there 40 years, and the other having been placed sometime in the "latter part of the 60's." There is no record of Montgomery street, though it has been open and used since 1842. It, doubtless, is a highway created by prescription (1 Rev. St. [1st Ed.] p. 521, § 100), and, if so, its extent must be limited to the portion actually used. Elliott, Roads & Streets, 136; Talmage v. Huntting, 29 N. Y. 447, 452; Ivory v. Town of Deerpark, 116 N. Y. 478, 482, 22 N. E. 1030; Harrison v. Platt, supra. There is no evidence that it was ever used westerly of the east wall of the plaintiffs' building and the other buildings in line with it. The plaintiffs' building has stood where it now does for more than 50 years. The easterly wall is in line with an engine house of the city, built in 1857 or 1858, and the Courrier building, erected in 1844.

While it is true that an abutting owner cannot acquire title to any portion of a highway by a long, continued encroachment (Walker v. Caywood, 31 N. Y. 51; St. Vincent Orphan Asylum v. City of Troy, 76 N. Y. 108, 32 Am. Rep. 286), it is equally true that the public, except by deed, dedication, condemnation, or adverse user for public travel, for such length of time as will raise a presumption of a grant, cannot acquire the right to use the abutting owners' premises as a street. It seems to me that these buildings must be the monument establishing the west line of Montgomery street, and not stones set many years after their erection, without, so far as appears, the consent of the power, or pursuant to any legal proceeding.

This leads to the conclusion that the plaintiffs are entitled to a decree that the defendant specifically perform the contract in question. The defendant should pay interest on the $21,000 from the date it ceased to pay rent for the use of the plaintiffs' building (Steiner v. Fourth Presbyterian Church, 17 App. Div. 500, 45 N. Y. Supp. 524; Fry, Spec. Perf. [3d Ed.] 620, § 1399), besides costs. Judgment accordingly.

Plaintiffs' counsel may prepare findings and serve same on the defendant's attorney, and if, after the lapse of five days, they are not agreed upon, they will be settled on three days' notice.